UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                Plaintiff,

                                    Criminal Action No. 5:16-CR-00108-002

    v.

EMILY OBERST,

                Defendant.

### **DEFENDANT EMILY OBERST'S SENTENCING MEMORANDUM**

The Defendant Emily Oberst, by and through her attorney Kimberly M. Zimmer, respectfully submits this Sentencing Memorandum in connection with her Sentencing currently scheduled for August 30, 2017.

### I.    INTRODUCTION

On April 19, 2017, Emily Oberst appeared before Your Honor and entered a guilty plea to Twelve Counts of a Superseding Indictment that charged her with Conspiracy to Sexually Exploit Children in violation of 18 U.S.C. § 2251(a) (Count One) and the Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(1) (Counts Two through Twelve). *See* Presentence Investigation Report dated July 17, 2017 ("PSR") at ¶1.[1]

As the Court is aware, Emily Oberst's Plea Agreement is pursuant to Federal Rules of Criminal Procedure Rule 11(c)(1)(C) and provides for an agreed upon sentence of 720 months or 60 years imprisonment, a lifetime of supervised release, special assessments totaling $1200, and

---

[1] Each Count carries a statutory mandatory minimum 15 year prison term and a maximum term of 30 years imprisonment. *See* PSR at ¶192.

forfeiture of two cell phones.[2]  *See* PSR at ¶5.

Ms. Oberst has remained incarcerated since her arrest and initial appearance on March 19, 2016.  *See* PSR at ¶6.

## II.    EMILY OBERST'S BACKGROUND AND FAMILY HISTORY

Shortly after the scheduled sentencing date, Emily Oberst will turn 25 years old.  She was 21 or 22 years old at the time of the offense conduct began.  At that time, and immediately prior to her arrest, she and her young daughter resided with her parents. *See* PSR at p. 3.  Ms. Oberst's daughter is her only child and she will be three years old this November.

Emily Oberst's parents have been married for almost 40 years and adopted Emily when she was just four days old.  They also adopted Emily's brother.  *See* PSR at ¶175.  Emily was raised in a religious and strict household and acknowledges that at a young age, she resisted and rebelled against the rules in her household and she has felt that she was the "black sheep" of the family. *See* PSR at ¶177.

As a child in grade school, Emily struggled in school to keep up and was the target of bullying.  *See id.*  To help her catch up on her schoolwork, her mother homeschooled Emily in the seventh and eighth grades.  *See id.*  She returned to school in the ninth grade attending Faith Heritage School, where she obtained her high school diploma.  *See* PSR at ¶186.

After she graduated from high school, Ms. Oberst attended Onondaga Community College.  Within weeks of moving into a dormitory at Onondaga Community College, Ms.

---

[2] As part of that Plea Agreement, the Parties agreed that the specified sentence is "reasonable and appropriate under the unique combination of facts and circumstances relating to the defendant, the offense of conviction, and related relevant conduct" and that such sentence "is sufficient, but not greater than necessary to adequately address the nature and seriousness of the defendant's offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant." *See* Plea Agreement at ¶3. Understanding that this language is a waiver of Ms. Oberst's right to argue for a different sentence than the sentence Ms. Oberst agreed to, the information in this Sentencing Memorandum is set forth to apprise the Court of information about Ms. Oberst so that the Court can independently evaluate and make its determination regarding Ms. Oberst's sentence as set forth in Paragraph C (p. 10) of the Plea Agreement.

Oberst met the man who later became the father of her child. This began a period in Ms. Oberst's life that can only be described as a precipitous decline. During her first semester, she dropped out of school and started living with this young man. She and he began abusing drugs together.

With the benefit of hindsight, Ms. Oberst has herself described this period in her life as the entry down a "dark road." *See* PSR at ¶177. Details of the nature and extent of Ms. Oberst's drug use, which was ongoing at the time of the offense conduct, are set forth in the PSR. *See* PSR at ¶185. Ms. Oberst's drug use no doubt exacerbated her underlying mental health issues, which included depression and anxiety. *See* PSR at ¶¶182; 184-185.

After the father of her child had moved to Florida, Ms. Oberst learned that she was pregnant. During this time of extreme emotional distress over the ending of this relationship and while she was pregnant, Ms. Oberst met her co-defendant Jason Kopp online and later began a relationship with him. *See* PSR at ¶8. This Court is well aware of Mr. Kopp and his history of abusing children. Ms. Oberst has admitted that she was a co-conspirator with Kopp, but unlike him, she was never involved with the abuse of children prior to meeting him. Indeed, she has no criminal history whatsoever and her work with children, before she met Mr. Kopp, was a rewarding and positive experience for her and the children for whom she cared. *See* PSR at ¶180.

Emily is described by those who knew her well and while she was growing up as an "outgoing, playful, delightful child" and a "happy child," who had a "friendly, upbeat attitude..." *See* August 11, 2017, letter from Rev. Dr. Barbara H. Cathey; August 15, 2017, letter from

Marjorie H. Owens; and August 15, 2017, letter from Laura Cathey.[3] Those who have known her through her life struggle to understand her involvement in the instant offense and provide the Court with insights into how Ms. Oberst has changed since her arrest and incarceration on these charges. One of those individuals notes her belief that Ms. Oberst "continues to be, at heart, the person she has always been at the core of her being" and others note her return to her religious beliefs and the support she has offered other inmates while incarcerated.

The PSR accurately sets forth additional details regarding Emily's background, family, and other personal circumstances.

### III.   SENTENCING CALCULATIONS, ISSUES, AND RECOMMENDATIONS

#### A.   ADVISORY GUIDELINE CALCULATION

After application of the Sentencing Guidelines' Grouping Rules and relevant sentencing enhancements, Ms. Oberst's total offense level is 43. *See* PSR ¶172.

Emily Oberst has never been in trouble before and has no prior criminal history and, therefore, her Criminal History Category is I. *See* PSR at ¶¶173-174.

By application of U.S.S.G. § 5G1.2(d), the ***advisory*** sentencing guideline is the combined length of the statutory maximum sentenced or 360 years imprisonment. *See* PSR at ¶193.

#### 1.   Emily Oberst has Fully Accepted Responsibility

Emily Oberst has fully accepted responsibility for her conduct and as a result of her timely acceptance of responsibility, and the Government's motion for application of U.S.S.G. §3E1.1(b), she is entitled to a three level decrease in her offense level. *See* U.S.S.G. §3E1.1 and PSR at ¶¶167-168. Even with these decreases in her offense level, Ms. Oberst's ***advisory*** sentencing guideline remains 360 months imprisonment. Her acceptance of responsibility,

---

[3] Letters of Support will be provided to the Court, the United States Attorney's Office, and the United States Probation Office under separate cover.

nonetheless remains an extremely important factor for the Court to consider. Ms. Oberst has expressed how sorry she is for her actions not only doing her interview with the Probation Officer but also to others who have visited her during her incarceration. *See* PSR at ¶45 and Letters of Support. While fully accepting responsibility for her conduct, she points out that the conduct does not represent who she is as a person, she did not in any way receive any sexual gratification from that conduct, and she did not know how to stop the conduct once she became involved with Jason Kopp. *See* PSR at ¶¶44-45.

### B. NON-GUIDELINE SENTENCING FACTORS

#### 1. 18 U.S.C. § 3553 (a)(1) (Nature and circumstances of the offense and history and characteristics of the defendant)

The nature and circumstances of the offense conduct are undisputed and are set forth in the PSR. *See* PSR ¶¶7-41.

Again, Ms. Oberst has no prior criminal history of any kind. *See* PSR ¶¶173-174.

#### 2. 18 U.S.C. § 3553 (a)(2) Factors

Ms. Oberst has fully accepted responsibility for her conduct, recognizes its impact and fully understands the seriousness of the offense conduct. She has been specifically deterred from (and will not commit) any further criminal conduct.

As any parent would be, Ms. Oberst's parents are obviously distraught by the behavior that led to this criminal prosecution and the lengthy sentence of imprisonment in the Plea Agreement. Indeed, her parents view a 60 year sentence of imprisonment as a life sentence, which it could be. *See* PSR at ¶181. Assuming that Ms. Oberst receives good time provisions under federal law, a sentence of 60 years imprisonment will require that she serve approximately 51 years in prison. *See* PSR at ¶195. At best, therefore, Ms. Oberst will be approximately 74 to

75 years of age when released from federal prison.  Such a lengthy sentence certainly constitutes punishment for the offense conduct.

### 3. 18 U.S.C. § 3553 (a)(3) Kinds of Sentences Available

The PSR sets forth the sentencing options available to the Court.

### 4. 18 U.S.C. §3553 (a)(4) and (a)(5) Advisory Guideline Range and Policy Statements

The *advisory* sentencing guidelines are *but one of several factors* in Section 3553(a), and are not an indication by themselves of a *reasonable* or *just* sentence.

### 5. 18 U.S.C. §3553 (a)(6) Sentencing Disparity

Among the factors that a Court can consider in determining a non-guideline sentence is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §3553 (a) (6).  *See also United States v. Wills*, 476 F.3d 103 (2d Cir. 2007), *abrogated on other grounds by United States v. Cavera,* 550 F.3d 180 (2d Cir. 2008).

### 6. 18 U.S.C. §3553 (a)(7) Restitution

Restitution is not an issue in this case.  *See* PSR at ¶206.

Respectfully submitted,

Dated:  August 16, 2017

 /s/ Kimberly M. Zimmer
**KIMBERLY M. ZIMMER**
Zimmer Law Office, PLLC
120 E. Washington Street, Suite 815
Syracuse, New York 13202
Bar Roll No.: 505346
(315) 422-9909